| | |
|---|---|
| **STATE OF MINNESOTA** | **DISTRICT COURT** |
| **COUNTY OF HENNEPIN** | **FOURTH JUDICIAL DISTRICT** |

Type of Case: Breach of Contract/Other

| | |
|---|---|
| Adam and Sarah Bunge, | Court File No. _____ |
| **Plaintiffs,** | |
| vs. | **SUMMONS** |
| Steven Curtis Skar, individually, and Coldwell Banker Burnet, | |
| **Defendants.** | |

THIS SUMMONS IS DIRECTED TO DEFENDANTS STEVEN CURTIS SKAR AND COLDWELL BANKER BURNET.

　　　1.　　**YOU ARE BEING SUED.** The Plaintiffs have started a lawsuit against you. The Plaintiff's Complaint against you is attached to this Summons. Do not throw these papers away. They are official papers that affect your rights. You must respond to this lawsuit even though it may not yet be filed with the Court and there may be no court file number on this Summons.

　　　2.　　**YOU MUST REPLY WITHIN 20 DAYS TO PROTECT YOUR RIGHTS.** You must give or mail to the person who signed this Summons a written response called an Answer within 20 days of the date on which you received this Summons. You must send a copy of your Answer to the person who signed this Summons located at:

　　　　　Daniel A. Haws
　　　　　Kelly S. Hadac
　　　　　Murnane Brandt
　　　　　30 East 7th Street, Suite 3200
　　　　　St. Paul, MN  55101

SCANNED

DEC 03 2010

U.S. DISTRICT COURT MPLS



EXHIBIT

A

3.     **YOU MUST RESPOND TO EACH CLAIM.** The Answer is your written response to the Plaintiffs' Complaint. In your Answer you must state whether you agree or disagree with each paragraph of the Complaint. If you believe the Plaintiffs should not be given everything asked for in the Complaint, you must say so in your Answer.

4.     **YOU WILL LOSE YOUR CASE IF YOU DO NOT SEND A WRITTEN RESPONSE TO THE COMPLAINT TO THE PERSON WHO SIGNED THIS SUMMONS.** If you do not Answer within 20 days, you will lose this case. You will not get to tell your side of the story, and the Court may decide against you and award the Plaintiff everything asked for in the Complaint. If you do not want to contest the claims stated in the Complaint, you do not need to respond. A default judgment can then be entered against you for the relief requested in the Complaint.

5.     **LEGAL ASSISTANCE.** You may wish to get legal help from a lawyer. If you do not have a lawyer, the Court Administrator may have information about places where you can get legal assistance. Even if you cannot get legal help, you must still provide a written Answer to protect your rights or you may lose the case.

6.     **ALTERNATIVE DISPUTE RESOLUTION.** The parties may agree to or be ordered to participate in an alternative dispute resolution process under Rule 114 of the Minnesota General Rules of Practice. You must still send your written response to the Complaint even if you expect to use alternative means of resolving this dispute.

Dated:  August 5, 2010

MURNANE BRANDT

Daniel A. Haws #193501
Kelly S. Hadac #0328194
Attorneys for Plaintiffs
30 East Seventh Street, Suite 3200
St. Paul, MN  55101-4919
(651) 227-9411

1116615

| | |
|---|---|
| STATE OF MINNESOTA | DISTRICT COURT |
| COUNTY OF HENNEPIN | FOURTH JUDICIAL DISTRICT |
| | Type of Case: Breach of Contract/Other |

---

| | |
|---|---|
| Adam and Sarah Bunge, | Court File No. _____ |
| Plaintiffs, | |
| vs. | COMPLAINT (JURY TRIAL DEMANDED) |
| Steven Curtis Skar, individually, and Coldwell Banker Burnet, | |
| Defendants. | |

---

Plaintiffs Adam and Sarah Bunge ("Bunges"), for their Complaint against Defendants Steven Curtis Skar, individually ("Skar"), and Coldwell Banker Burnet ("CBB"), state and allege as follows:

## PARTIES

1. Bunges are citizens of the State of Minnesota. Sarah Bunge is a pastor. Adam Bunge is a licensed attorney.

2. Skar is an adult resident of the State of Minnesota.

3. CBB is a corporation with its principal place of business located at 7550 France Avenue South, Edina, Minnesota.

## VENUE AND JURISDICTION

4. Venue and jurisdiction in the State of Minnesota, County of Hennepin district court is appropriate as Skar and CBB reside in Hennepin County, Minnesota, and because the acts giving rise to Bunges' claims in this case occurred in Hennepin County, Minnesota.

## FACTUAL ALLEGATIONS

### BACKGROUND OF THE PARTIES

5.     The Bunges are the owners of real property located in Minnesota ("Bunge Home").

6.     CBB is a corporation that, among other things, employs agents to help customers sell their homes.

7.     At all relevant times herein, Skar was a CBB real estate agent.

8.     At all relevant times herein, Skar was part of The Pat Ginsbach Group, LLC.

9.     The Pat Ginsbach Group, LLC is affiliated with CBB.  The Pat Ginsbach Group, LLC employs CBB real estate agents.

10.     CBB maintains supervisory responsibility for its real estate agents, including the supervisory responsibility for Skar at all relevant times herein.

11.     CBB retains the right to hire and fire agents employed by The Pat Ginsbach Group, LLC and/or CBB.

### SKAR'S CRIMINAL PAST

12.     Upon information and belief and prior to Skar becoming a CBB agent for The Pat Ginsbach Group, LLC, Skar was charged with and convicted of exhibiting "prohibited language and conduct in park."

13.     Upon information and belief and prior to Skar becoming a CBB agent for The Pat Ginsbach Group, LLC, Skar was charged with and/or convicted of driving under the influence and indecent exposure.

14.     CBB was aware, or should have been aware, of Skar's criminal background prior to hiring and/or retaining Skar as a CBB agent.

15.     After Skar became a CBB agent, and in the Fall of 2009, CBB received complaints from at least one individual that Skar was involved in drug dealing and male prostitution.    Despite these complaints and Skar's criminal history, CBB did not terminate Skar as its agent, did not investigate the complaints, and did not notify The Pat Ginabach Group, LLC of said complaints.

**THE LISTING CONTRACT**

16.     On November 12, 2009, the Bunges retained CBB and its agent, Skar, to list the Bunge Home for sale.  The Bunges signed a CBB Exclusive Right to Sell Listing Contract on November 12, 2009 ("the Listing Contract").

17.     Bunges were not aware of Skar's criminal history or the complaints that had been lodged against Skar that he was involved in drug dealing and male prostitution.

18.     CBB and Skar never informed the Bunges of Skar's criminal history or the complaints that had been lodged against Skar that he was involved in drug dealing and male prostitution.

19.     As their real estate agent from CBB, the Bunges trusted Skar with access to the Bunge Home in the interest of CBB and Skar marketing the Bunge Home for sale.

20.     As their real estate agent from CBB, Skar and CBB had a fiduciary duty to protect the valuables of the Bunge Home.

21.   As their real estate agent from CBB, Skar and CBB had a fiduciary duty to list the Bunge Home for sale and perform all reasonable acts necessary to actively and reasonably market the Bunge Home for sale to the general public.

22.   Pursuant to the Listing Contract, CBB and Skar owed the Bunges a duty of loyalty to act only in the Bunges' best interests.

23.   Pursuant to the Listing Contract, CBB and Skar owed the Bunges a duty of obedience to carry out all of the Bunges' lawful instructions.

24.   Pursuant to the Listing Contract, CBB and Skar owed the Bunges a duty of disclosure to inform the Bunges' all material facts of which CBB and/or Skar had knowledge of which might reasonably affect the Bunges' use and enjoyment of the Bunge Home.

25.   Pursuant to the Listing Contract, CBB and Skar owed the Bunges a duty of confidentiality to keep the Bunges' confidences confidential unless required by law to disclose specific information.

26.   Pursuant to the Listing Contract, CBB and Skar owed the Bunges a duty of reasonable care in performing duties as an agent.

27.   Pursuant to the Listing Contract, CBB and Skar owed the Bunges a duty of accounting to keep all of the Bunges' money and property in safekeeping.

28.   Pursuant to the Listing Contract, CBB and Skar are liable to the Bunges for all attorneys' fees, costs and expenses incurred by the Bunges' in enforcing said agreement.

## THE ILLEGAL, EXTREME AND OUTRAGOUS SEXUAL ESCAPADES OF SKAR IN THE BUNGE HOME WHILE THE BUNGES WERE AWAY IN LONDON

29.    In November 2009 when the Bunges first listed the Bunge Home for sale through CBB and Skar, the Bunges informed Skar that they would be leaving in the Spring of 2010 for London, England for a period of approximately four months.

30.    In the Spring of 2010, the Bunges left for London, England.

31.    On May 1, 2010, the Bunges were in London, England.

32.    Skar knew the Bunges were in London, England on May 1, 2010.

33.    On May 1, 2010, Skar was physically present inside the Bunge Home. Skar gained access to the Bunge Home by using his CBB real estate agent authority to access the key to the Bunge Home that was located in a lockbox attached to the Bunge Home and/or entering through the garage to the Bunge Home with a code provided to Skar by the Bunges at CBB's request for Skar to use in his capacity as the listing agent with CBB.

34.    On May 1, 2010, Skar was not showing the Bunge Home to any prospective purchasers.

35.    On May 1, 2010, Skar represented to Bunges' neighbors that he was cleaning the home and getting ready for an open house that was scheduled for May 2, 2010.

36.    On May 1, 2010, the Bunge Home did not need cleaning because the Bunges' housecleaner had recently cleaned the home.

37.    Skar provided false information to the Bunges' neighbors in that Skar was not actually cleaning the Bunge Home so as to get ready for an open house scheduled

5

for May 2, 2010 ("the Lie"). Skar did not conduct an open house at the Bunge Home on May 2, 2010.

38.    On May 1, 2010, Skar was accompanied by an unknown male inside the Bunge Home that was not a prospective purchaser of the Bunge Home.

39.    The Bunges never gave Skar permission to bring unknown males inside the Bunge Home for purposes of homosexual relations.

40.    Skar never provided the Bunges any prior notice that he would even be at the Bunge Home on May 1, 2010.

41.    Skar and the unknown male companion entered the Bunge Home on May 1, 2010 for the purpose of engaging in homosexual activities.

42.    Skar, who accessed the Bunge Home on May 1, 2010 as a CBB agent, and/or his male companion, left semen, lotion, lubricant and other fluid stains throughout the Bunge Home, including but not limited to stains on the living room couch and end tables, the living room carpet leading up the stairs to the master bedroom where the Bunges sleep, in the master bed where the Bunges sleep, in the master toilet, and in the master shower ("the Unauthorized Sexual Escapades").

43.    CBB has acknowledged its agent's Unauthorized Sexual Escapades and spent $7,482.07 to try to remedy some of the damages the Bunges have sustained. CBB has changed all locks on entry doors to the Bunge Home to prevent Skar from reentering. CBB also hired professional cleaning services to clean the Bunge Home. CBB also replaced the living room couch, the master bed and bedding, pillows, robes, a negligee and towels, all of which were soiled by fluids from Skar and/or his male companion.

44.   Upon information and belief, while the Bunges were away in London, Skar accessed Adam Bunge's home office computer that was located in the Bunge Home.

45.   Skar did not have permission to access Adam Bunge's home office computer.

46.   Upon information and belief, Skar, or someone on his behalf or with his knowledge, illegally took Adam Bunge's financial and other information from his home office computer.

47.   Upon information and belief, Skar, or someone on his behalf or with his knowledge, has made unauthorized purchases using Adam Bunge's financial and other information.

48.   Upon information and belief, Skar, or someone on his behalf and with his knowledge, placed on Adam Bunge's home office computer certain software that could further jeopardize the Bunges' personal, confidential, and private financial and other information.  The conduct described in paragraphs 44-48 shall hereinafter be referred to as "the Unauthorized Computer Access."

49.   Upon information and belief, Skar never reasonably performed his duties as a CBB agent because he did not want to sell the Bunge Home as he knew he would have unfettered access to it to engage in illicit and outrageous behaviors while the Bunges were away in London, England.

## TERMINATION OF SKAR

50.   Skar was terminated for cause from The Pat Ginsbach Group, LLC on May 10, 2010 after Pat Ginsbach personally discovered that Skar had exploited his real

7

estate license and his access rights to the Bunge Home while the Bunges, who were CBB clients, were away in London, England.

51.   Pat Ginsbach determined that Skar engaged in improper activity at the Bunge Home on May 1, 2010, including sexual activities.

52.   Pat Ginsbach personally observed the stains which resulted from Skar's illicit, extreme and outrageous escapades at the Bunge Home.

53.   Since the termination of Skar, Pat Ginsbach learned that in the Fall of 2009, more than one complaint had been lodged to CBB regarding alleged drug dealing and male prostitution in which Skar was involved.

54.   CBB received the complaints of male prostitution and drug dealing by Skar prior to entering into the Listing Contract.

55.   Neither Skar nor CBB informed Pat Ginsbach of said complaints until after Skar was terminated.

56.   Had Pat Ginsbach been informed of the complaints against Skar by CBB at the time they were made, Skar's employment would have been terminated immediately and the events that occurred at the Bunge Home on May 1, 2010 would have been avoided.

## THE SEVERE EMOTIONAL IMPACT UPON THE BUNGES

57.   The Bunges no longer feel safe in their own home.

58.   The Bunges can no longer reside in their own home knowing the events that transpired on May 1, 2010 as described in the above paragraphs.

59.   The Bunges have difficulty sleeping in their own bedroom.

60.     Even after CBB had the Bunge Home professionally cleaned, they have found lubricants and incense located in their house that do not belong to them.

61.     Even after CBB had the Bunge Home professionally cleaned, sticky substance left behind as a result of Skar's Unauthorized Sexual Escapades still exists on the furniture in the Bunge Home that has not been replaced.

62.     The Bunges are afraid to let their young children play in the home knowing the events that transpired on May 1, 2010 as described in the above paragraphs.

63.     Since returning from London, England, the Bunges have made every effort to live in locations other than the Bunge Home due to the constant state of anxiety and other physical and emotional damages they have suffered due to the events that transpired on May 1, 2010 as described in the above paragraphs.

## CLAIMS

## COUNT I:  BREACH OF CONTRACT (CBB AND SKAR)

64.     The Bunges reallege the allegations set forth above and incorporate them herein by reference as though fully set forth herein.

65.     The Bunges signed the Listing Contract with CBB in November 2009. Skar was CBB's agent responsible for listing and selling the Bunge Home.

66.     Pursuant to the Listing Contract, CBB and Skar owed the Bunges a duty of loyalty to act only in the Bunges' best interests.

67.     CBB and Skar breached the duty of loyalty due to, among other reasons, the Lie, the Unauthorized Computer Access, and the Unauthorized Sexual Escapades.

68.     Pursuant to the Listing Contract, CBB and Skar owed the Bunges a duty of obedience to carry out all of the Bunges' lawful instructions.

69. CBB and Skar breached the duty of obedience due to, among other reasons, the Lie, the Unauthorized Computer Access, and the Unauthorized Sexual Escapades since the Bunges had only asked CBB and Skar to sell the Bunge Home.

70. Pursuant to the Listing Contract, CBB and Skar owed the Bunges a duty of disclosure to inform the Bunges' all material facts of which CBB and/or Skar had knowledge of which might reasonably affect the Bunges' use and enjoyment of the Bunge Home.

71. CBB and Skar breached the duty of disclosure due to, among other reasons, the Lie, the Unauthorized Computer Access, and the Unauthorized Sexual Escapades.

72. Pursuant to the Listing Contract, CBB and Skar owed the Bunges a duty of confidentiality to keep the Bunges' confidences confidential unless required by law to disclose specific information.

73. CBB and Skar breached the duty of confidentiality due to, among other reasons, the Lie, the Unauthorized Computer Access, and the Unauthorized Sexual Escapades.

74. Pursuant to the Listing Contract, CBB and Skar owed the Bunges a duty of reasonable care in performing duties as an agent.

75. CBB and Skar breached the duty of reasonable care due to, among other reasons, the Lie, the Unauthorized Computer Access, and the Unauthorized Sexual Escapades.

76. Pursuant to the Listing Contract, CBB and Skar owed the Bunges a duty of accounting to keep all of the Bunges' money and property in safekeeping.

10

77. CBB and Skar breached the duty of accounting due to, among other reasons, the Lie, the Unauthorized Computer Access, and the Unauthorized Sexual Escapades.

78. Pursuant to the Listing Contract, CBB and Skar are liable to the Bunges for all attorneys' fees, costs and expenses incurred by the Bunges' in enforcing said agreement.

79. As a result of Skar and CBB's breaches of the Listing Agreement, the Bunges seek damages in an amount in excess of $50,000.00, plus the recovery of all of their attorneys' fees, costs and expenses incurred in enforcing the Listing Contract.

## COUNT II: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (CBB AND SKAR)

80. The Bunges reallege the allegations set forth above and incorporate them herein by reference as though fully set forth herein.

81. The Lie, the Unauthorized Computer Access, the Unauthorized Sexual Escapades, and the fact that CBB did nothing to prevent Skar from engaging in said conduct, despite knowing his propensity to do so, is conduct that is extreme and outrageous.

82. The Unauthorized Sexual Escapades by a real estate agent is atrocious and passes the boundaries of decency and is utterly intolerable to the civilized community.

83. Skar intended to cause the Bunges severe emotional distress, or proceeded to engage in the Unauthorized Sexual Escapades with knowledge that it was substantially certain, or that it was at least highly probable, that severe emotional distress would be caused to the Bunges if and when the Bunges discovered what

11

conduct CBB's agent Skar engaged in on May 1, 2010 at the Bunge Home and possibly on other occasions that have not yet been discovered.

84.    The Bunges have suffered severe emotional distress as a result of Skar's severe and outrageous conduct discussed above.

85.    CBB is responsible for the conduct of its agent Skar based on common law principles of vicarious liability and/or respondeat superior.

86.    As a result of the foregoing, CBB and Skar are liable to the Bunges for an amount in excess of $50,000.

## COUNT III: NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS (CBB AND SKAR)

87.    The Bunges reallege the allegations set forth above and incorporate them herein by reference as though fully set forth herein.

88.    CBB and Skar owed the Bunges a duty of reasonable care in performing duties as an agent and to avoid causing the Bunges emotional distress.

89.    CBB and Skar breached these duties by engaging in the Lie, the Unauthorized Computer Access, and the Unauthorized Sexual Escapades.

90.    CBB and Skar's conduct has caused the Bunges severe emotional distress and physical injury.

91.    CBB is responsible for the conduct of its agent Skar based on common law and/or contractual principles of vicarious liability and/or respondeat superior.

92.    As a result of the foregoing, CBB and Skar are liable to the Bunges for an amount in excess of $50,000.

## COUNT IV:  RES IPSA LOQUITUR

93.    The Bunges reallege the allegations set forth above and incorporate them herein by reference as though fully set forth herein.

94.    The semen, lotion, lubricant and other fluid stains throughout the Bunge Home that were not present when the Bunges left for London, but occurred while they were in London, including but not limited to stains on the living room couch and end tables, the living room carpet leading up the stairs to the master bedroom where the Bunges sleep, in the master bed where the Bunges sleep, in the master toilet, and in the master shower, would ordinarily not occur in the absence of someone's negligence.

95.    The damage described above, and the emotional damage to the Bunges, were caused by an agency or instrumentality within the exclusive control of CBB and/or Skar.

96.    The damage described above, and the emotional damage to the Bunges, were not caused by any voluntary action or contribution by the Bunges.

97.    Accordingly, the Bunges are entitled to an inference of negligence against CBB and Skar and damages in excess of $50,000.

## COUNT V: NEGLIGENCE (CBB AND SKAR)

98.    The Bunges reallege the allegations set forth above and incorporate them herein by reference as though fully set forth herein.

99.    CBB and Skar owed the Bunges a duty of reasonable care in performing duties as an agent.

100.   CBB and Skar breached this duty as a result of, among other things, the Lie, the Unauthorized Computer Access, and the Unauthorized Sexual Escapades.

101. CBB and Skar's breach of this duty has caused the Bunges damages.

102. As a result of the foregoing, CBB and Skar are liable to the Bunges for an amount in excess of $50,000.

## COUNT VI: NEGLIGENT SUPERVISION (CBB)

103. The Bunges reallege the allegations set forth above and incorporate them herein by reference as though fully set forth herein.

104. CBB owed a duty to the Bunges to exercise reasonable care in the supervision of its real estate agents.

105. CBB breached that duty by failing to adequately supervise Skar, especially in light of the known complaints against Skar and his criminal history.

106. As a direct and proximate result of CBB's negligence, the Bunges sustained damages in excess of $50,000.

## COUNT VII: NEGLIGENT RETENTION (CBB)

107. The Bunges reallege the allegations set forth above and incorporate them herein by reference as though fully set forth herein.

108. CBB owed its clients, including the Bunges, a duty to exercise reasonable care in the retention of its agents that CBB knew had access rights to the private residences of clients.

109. CBB breached that duty by failing to terminate Skar or otherwise to provide other reasonable safeguards after receiving complaints about Skar's inappropriate conduct as described above.

110. Had CBB terminated Skar, the Bunges would not have suffered any damage.

14

110.   Had CBB timely informed The Pat Ginsbach Group, LLC about Skar's inappropriate conduct and/or complaints, the Bunges would not have suffered any damage.

111.   As a direct and proximate result of CBB's negligence, the Bunges sustained damages in excess of $50,000.

### COUNT VIII: NEGLIGENT HIRING (CBB)

112.   The Bunges reallege the allegations set forth above and incorporate them herein by reference as though fully set forth herein.

113.   CBB owed its clients, including the Bunges, a duty to exercise reasonable care in the hiring of its agents that CBB knew had access rights to the private residences of clients.

114.   CBB breached that duty when it retained Skar as its real estate sales agent despite knowing, or at least should have known, about Skar's prior criminal history.

115.   Had CBB not hired Skar, the Bunges would not have suffered any damage.

116.   As a direct and proximate result of CBB's negligence, the Bunges sustained damages in excess of $50,000.

### COUNT IX: TRESSPASS TO LAND (SKAR AND CBB)

117.   The Bunges reallege the allegations set forth above and incorporate them herein by reference as though fully set forth herein.

118.   On May 1, 2010, Skar did not have permission to enter the Bunge Home for the activities that he engaged in on that day and night.

15

119.   On May 1, 2010, Skar and an unknown male physically entered the Bunge Home.

120.   Skar and the unknown male intended on entering the Bunge Home on May 1, 2010.

121.   Skar caused himself and the unknown male to enter the Bunge Home on May 1, 2010.

122.   Skar's actions constitute a trespass on the Bunge Home.

123.   CBB is responsible for the conduct of its agent Skar based on common law principles of vicarious liability and/or respondeat superior.

124.   Skar, by virtue of the destruction of the Bunges' personal property at the Bunge Home, has violated Minn. Stat. § 548.05, which entitles the Bunges to treble the damages they suffered as a direct consequence of the destruction and damage of and to personal property at the Bunge Home.

## COUNT X:  TRESPASS TO CHATTELS (CBB AND SKAR)

125.   The Bunges reallege the allegations set forth above and incorporate them herein by reference as though fully set forth herein.

126.   On May 1, 2010, Skar did not have permission to enter the Bunge Home for the activities that he engaged in on that day and night.

127.   On May 1, 2010, Skar and an unknown male physically entered the Bunge Home.

128.   Skar and the unknown male intended on entering the Bunge Home on May 1, 2010 and intended to cause damage to personal property inside the Bunge Home.

129.   Skar caused himself and the unknown male to enter the Bunge Home on May 1, 2010 and caused damage to personal property inside the Bunge Home.

130.   Skar's actions constitute a trespass to chattels as Skar has interfered with the Bunges' right to possession of the personal property that was damaged.

131.   CBB is responsible for the conduct of its agent Skar based on common law principles of vicarious liability and/or respondeat superior.

132.   As a result of the foregoing, the Bunges sustained damages in excess of $50,000.

## COUNT XI: INVASION OF PRIVACY (CBB AND SKAR)

133.   The Bunges reallege the allegations set forth above and incorporate them herein by reference as though fully set forth herein.

134.   On May 1, 2010, Skar did not have permission to enter the Bunge Home for the activities that he engaged in on that day and night.

135.   On May 1, 2010, Skar and an unknown male physically entered the Bunge Home without permission to do so.

136.   The physical invasion of the Bunge Home on May 1, 2010 by Skar was an intrusion on the Bunges' private affairs and seclusion.

137.   Said intrusion is objectionable to a reasonable person.

138.   CBB is responsible for the conduct of its agent Skar based on common law and/or contractual principles of vicarious liability and/or respondeat superior.

139.   As a result of the foregoing, the Bunges sustained damages in excess of $50,000.

## COUNT XII: CIVIL THEFT (CBB AND SKAR)

140.   The Bunges reallege the allegations set forth above and incorporate them herein by reference as though fully set forth herein.

141.   Skar stole monies and financial information from the Bunges as described above in the Unauthorized Computer Access.   Skar has enriched himself at the expense of the Bunges.

142.   CBB is responsible for the conduct of its agent Skar based on common law and/or contractual principles of vicarious liability and/or respondeat superior.

143.   Based on the above illegal conduct, the Bunges have been damaged and seek to recover all the damages set forth in Minn. Stat. § 604.14.

WHEREFORE, Adam and Sarah Bunge respectfully request that the Court enter judgment as follows:

1.   Finding that Coldwell Banker Burnet is liable for each and every cause of action set forth above;

2.   Finding that Steven Curtis Skar is liable for each and every cause of action set forth above; and

3.   Awarding damages in favor of Adam and Sarah Bunge in an amount in excess of $50,000, plus interest, costs, expenses, attorneys' fees, and for any other relief the Court deems just and equitable.

DATED: August 5, 2010.

MURNANE BRANDT

Daniel A. Haws, #193501
Kelly S. Hadac, #0328194
Attorneys for Plaintiffs
30 East Seventh Street, Suite 3200
St. Paul, MN  55101
(651) 227-9411

## ACKNOWLEDGEMENT

The party upon whose behalf this pleading is submitted, by and through the undersigned, hereby acknowledges that sanctions may be imposed for a violation of Minn. Stat. § 549.211.

Kelly S. Hadac

1116496

19