## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Safeco Insurance Company
of Illinois,

        **Plaintiff,**

v.

Steven Skar, Adam Bunge and
Sarah Bunge,

        **Defendants**.

Civil No. 10-CV-4789 (SRN/JJG)

MEMORANDUM AND ORDER

_____

Andrew D. Deutsch and Christian A. Preus, Meagher & Geer, PLLP, 33 South 6th Street, Suite 4400, Minneapolis, Minnesota 55402, for Plaintiff.

Francis J. Rondoni and Gary K. Luloff, Chestnut Cambronne, PA, 17 Washington Avenue North, Suite 300, Minneapolis, Minnesota 55401, for Defendant Steven Skar.

Daniel A. Haws and Kelly S. Hadac, Murnane Brandt, PA, 30 East 7th Street, Suite 3200, St. Paul, Minnesota 55101, for Defendants Adam and Sarah Bunge.
_____

SUSAN RICHARD NELSON, United States District Judge

       This matter is before the Court on Plaintiff's Motion for Summary Judgment [Doc. No. 16]. For the reasons that follow, Plaintiff's Motion is granted.

## I.    BACKGROUND

       This action was brought by Plaintiff Safeco Insurance Company of Illinois ("Safeco") under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, seeking a determination of rights and duties under a homeowner's insurance policy. The insurance policy had a stated term running from November 2009 to November 2010, and thus was in effect at the time the alleged improprieties took place. (See Smith Aff. Ex. 1 (insurance policy).) Safeco asks the Court to

find that it is under no obligation to defend or indemnify its insured, Defendant Steven Skar, for the underlying lawsuit brought by Defendants Adam and Sarah Bunge against Skar and his employer, Coldwell Banker Burnet, in Hennepin County District Court.  See Bunge v. Skar, No. 27-CV-10-19128 (Minn. 4th Jud. Dist. Ct. filed Aug. 5, 2010).

The allegations set forth in the underlying lawsuit are salacious.  The Bunges allege that Skar, who was a Coldwell Banker Burnet real estate agent, engaged in "illegal, extreme, and outrageous sexual escapades and unauthorized computer access" while ostensibly attempting to sell the Bunges' home.  (Compl. ¶ 2 [Doc. No. 1].)  Specifically, the Bunges state that they retained Skar and Coldwell Banker Burnet in November 2009.  (Id. ¶ 11.)  In the spring of 2010, the Bunges left for London, England, for several months but allowed Skar access to their home to continue to show it to prospective buyers.  Indeed, the Bunges allege that, on May 1, 2010, Skar represented to the Bunges' neighbors that he was cleaning the home in preparation for a showing the next day.  (Id. ¶ 14.)

Yet the Bunges allege that Skar lied about his presence at their home on May 1, 2010.  Instead of cleaning, the Bunges contend, Skar and an unknown male who accompanied him and who was not a prospective buyer "engaged in unauthorized sexual activities and left semen, lotion, lubricant, and other fluid stains throughout the Bunge home."  (Id. ¶ 15.)  In addition, the Bunges allege that "Skar, or someone acting on his behalf and with his knowledge, . . . took Adam Bunge's financial and other information from the [home office] computer" and made unauthorized purchases using that information.  (Id. ¶ 17.)  Finally, the Bunges allege that Skar never reasonably performed his duties as a real estate agent "because he did not want to sell the Bunge home so that he could have access to it to while the Bunges were away in London."  (Id.

2

¶ 18.)

After discovering Skar's alleged activities, Coldwell Banker Burnet terminated Skar's employment and spent nearly $7,500 to remedy some of the damages incurred by the Bunges, including hiring a cleaning service, changing the locks on the home, and replacing the living room couch, the master bed and linens, pillows, robes, a negligee, and towels.  (Id. ¶¶ 16, 19.) Nevertheless, the Bunges contend that they are no longer able to reside in their home, that they discovered lubricants and incense that does not belong to them, and that they discovered furniture with a sticky substance left behind from the sexual activities.  (Id. ¶ 20.)

The underlying lawsuit alleged 12 counts, including breach of contract, intentional infliction of emotional distress, negligent infliction of emotional distress, negligence, res ipsa loquitur claiming the Bunges are entitled to an inference of negligence, negligent supervision against only Coldwell Banker Burnet, negligent retention against only Coldwell Banker Burnet, negligent hiring against only Coldwell Banker Burnet, trespass to land, trespass to chattels, invasion of privacy, and civil theft.  (Id. ¶ 21.)  The state court has since dismissed the res ipsa loquitur, negligent supervision, negligent retention, and negligent hiring counts.  (Preus Aff. Ex. 4 (Order at 1-2, Bunge v. Skar, No. 27-CV-10-19128 (Minn. 4th Jud. Dist. Ct. Feb. 18, 2011).) Now, as noted above, "Safeco seeks a declaration regarding the parties' rights and obligations under the [insurance] [p]olicy with respect to insurance coverage for Skar . . . ."  (Comp. ¶ 24.)

## II.     DISCUSSION

At the outset, the Court notes that "[c]ontracts of insurance, like other contracts, must be construed according to the terms the parties have used, to be taken and understood, in the absence of ambiguity, in their plain, ordinary, and popular sense, so as to give effect to the

intention of the parties as it appears from the entire contract." <u>Bobich v. Oja</u>, 104 N.W.2d 19, 24 (Minn. 1960) (citations omitted).  The relevant part of the insurance policy is found under Section II, Coverage E, Personal Liability Coverage, as modified by an endorsement.  (<u>See</u> Smith Aff. Ex. 1 at SAF000021, 23-24, 28-29, 36-38 (insurance policy).)  The Court will analyze the parties' relative rights and duties in light of the plain meaning of the provisions contained therein.

Safeco contends that the insurance policy does not provide coverage based on a number of exclusions contained therein.  The Court finds that three of these exclusions apply: the expected, intended, or foreseeable harm exclusion; the business-pursuits exclusion; and the professional-services exclusion.  (Pl.'s Supp. Mem. at 2.)  Further, defense counsel concedes that only four of the claims in the underlying complaint should be considered in determining whether Safeco has a duty to defend Skar.  Specifically, counsel states that the policy precludes coverage on all claims but the negligence, negligent infliction of emotional distress, trespass to land, and trespass to chattels claims.  Of those remaining claims, counsel argues most vehemently that the two negligence claims obligate Safeco to defend because covering negligent acts goes to the very heart of the insurance policy.  The Court will thus limit its analysis to the three policy exclusions and four counts in the underlying complaint that are genuinely at issue.

### A.      Standard of Review and Duty to Defend

Summary judgment is appropriate where there are no genuine issues of material fact and the case can be decided as a matter of law.  Fed. R. Civ. P. 56(a).  The moving party bears the burden of proof and the evidence must be viewed in the light most favorable to the non-moving party.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250 (1986); <u>Enter. Bank v. Magna Bank</u>,

92 F.3d 743, 747 (8th Cir. 1996).  Because "[i]nterpretation of an insurance policy is a question

of law," this case is ripe for a summary judgment decision.  Meadowbrook, Inc. v. Tower Ins.

Co., 559 N.W.2d 411, 415 (Minn. 1997) (citation omitted).

   "'An insurer assumes two duties to its insured: the duty to defend and the duty to

indemnify.'"  Reinsurance Ass'n of Minn. v. Timmer, 641 N.W.2d 302, 307 (Minn. App. 2002)

(quoting St. Paul Fire & Marine Ins. Co. v. Nat'l Chiropractic Mut. Ins. Co., 496 N.W.2d 411,

415 (Minn. App. 1993)).  This case involves the duty to defend, which "is distinct from and

broader in scope than the duty to indemnify."  Franklin v. W. Nat'l Mut. Ins. Co., 574 N.W.2d

405, 406 (Minn. 1998) (citation omitted).  "In determining the existence of such a duty, a court

will compare the allegations in the complaint in the underlying action with the relevant language

in the insurance policy."  Id.  Further, it should be noted, particularly in this case, "that an

insurer's obligation to defend does not depend upon the merits of the claim asserted against its

insured."  Truchinski v. Cashman, 257 N.W.2d 286, 287 (Minn. 1977).  Instead, the Court must

analyze only the allegations contained in the underlying complaint.  See id. at 287-88.

   "The 'duty to defend an insured . . . arises when any part of the claim is arguably within

the scope of the policy's coverage,' and an insurer wishing 'to escape that duty has the burden of

showing that all parts of the cause of action fall clearly outside the scope of coverage.'"

Travelers Prop. Cas. Co. of Am. v. Gen. Cas. Ins. Cos., 465 F.3d 900, 903 (8th Cir. 2006)

(quoting Jostens, Inc. v. Mission Inc. Co., 387 N.W.2d 161, 165-66 (Minn. 1986)).  Indeed, "[i]f

a complaint alleges several claims, and any one of them would require the insurer to indemnify,

the insurer must provide a defense against all claims."  Timmer, 641 N.W.2d at 307.

Nevertheless, it is important to note that "the suit must be based on a claim covered by the policy

before the obligation to defend comes into play.  Where there is no coverage by reason of an

exclusionary clause, there is no obligation to defend."  <u>Bobich</u>, 104 N.W.2d at 24 (citations

omitted).

      **B.**      **Expected, Intended, or Foreseeable Harm Exclusion**

      Safeco contends that insurance policy exclusion 1.a(1) applies in this case.  That

provision states that the policy will "not apply to bodily injury or property damage [that] is

expected or intended by the <u>insured</u> or [that] is the foreseeable result of an act or omission

intended by the <u>insured</u>."  (Smith Aff. Ex. 1 at SAF000021, 36.)  Safeco argues both that Skar

intended to injure the Bunges and that the results of his conduct was foreseeable, and thus that

this exclusion should apply.

      As Safeco notes, whether the harm precipitated by the insured's conduct was foreseeable

is an altogether different inquiry than whether such harm was expected or intended.  <u>See</u> <u>Cont'l</u>

<u>W. Ins. Co. v. Toal</u>, 244 N.W.2d 121, 125 (Minn. 1976) (stating that "an 'expected injury' . . .

cannot be equated with foreseeable injury").  Indeed, in an insurance-contract context, an

exclusion provision that precludes coverage for expected or intended harm applies only to the

specific harm that the insured intended to cause.  <u>See</u> <u>id.</u> at 124-25.[1]  But when, as here,

"foreseeable" harm is also included in the exclusion language, the exclusion is broadened to

preclude coverage where harm caused by the insured was the "natural and probable

consequence" of the insured's intentional acts.  <u>See</u> <u>id.</u> at 125.

      The Bunges' alleged injuries are certainly the natural and probable consequence of Skar's

---

[1] As the court noted in <u>Toal</u>, this limited definition stands in contrast to a tort or criminal
law context, in which expected or intended harm includes those injuries that occur as a "natural
and probable consequence of [one's] intentional acts."  <u>Toal</u>, 244 N.W.2d at 125.

alleged conduct.  The Bunges allege that they left their home in Skar's care for an extended

period of time while they left the country.  To discover that the individual who was supposed to

be safeguarding their home instead allegedly participated in the soiling of numerous items as a

result of sexual activities and the theft of personal and financial information would certainly take

an emotional—not to mention pecuniary—toll on most homeowners.  The Court thus finds that

the Bunges' alleged injuries are a natural and probable consequence of Skar's alleged conduct.

The alleged harm was therefore foreseeable, this exclusion applies to all four claims at issue, and

Safeco has no duty to defend.

C.     **Business-Pursuits Exclusion**

The insurance policy also states that coverage will not include harm "arising out of

business pursuits of the insured or the rental or holding for rental of any part of any premises by

the insured."  (Smith Aff. Ex. 1 at SAF000021, 36.)  The policy states that "'business' includes

[a] trade, profession, or occupation."  (Id. at SAF000028.)  Safeco contends that, because Skar

had access to the Bunges' home solely for the purpose of selling that residence, all of his alleged

actions that resulted in the Bunges' injuries arose out of Skar's business pursuits.  Skar counters

by pointing to an exception to this exclusion that states that "[t]his exclusion does not apply

to . . . activities [that] are ordinarily incident to non-business pursuits."  (Id. at SAF000021).

Skar argues that this exception applies because his alleged liability-creating conduct was not

business related.

To begin, the Court notes that Skar is correct in stating "that the appropriate focus must

be on the liability-creating conduct" at issue in the underlying lawsuit.  Zimmerman v. Safeco

Ins. Co. of Am., 605 N.W.2d 727, 731 (Minn. 2000).  After determining the appropriate conduct

at issue, the Court must decide if such conduct arose out of Skar's business pursuits.  The phrase "arising out of" means that "there is a causal connection between the conduct identified in the exclusion and the injuries for which compensation is being sought."  SECURA Supreme Ins. Co. v. M.S.M., 755 N.W.2d 320, 327 (Minn. Ct. App. 2008) (citations omitted).  The Minnesota Supreme Court has further elucidated this phrase, stating that it "is broadly construed," and "generally means 'originating from,' 'growing out of,' or 'flowing from.'"  Dougherty v. State Farm Mut. Ins. Co., 699 N.W.2d 741, 744 (Minn. 2005) (citations omitted).

This case is similar to Zimmerman, in which the court held that the business-pursuits exception to an insurance policy applied when the conduct at issue was sexual harassment in the workplace.  Zimmerman, 605 N.W.2d at 731.  The court supported its holding by stating that the conduct at issue "by definition occurs in the workplace."  Id.  In this case, the liability-creating conduct at issue is Skar's alleged sexual conduct, misrepresentations, and pilfering of personal and financial information from the Bunges' computer.  The harm resulting from that conduct was a direct result of Skar's access to the Bunges' home—access that, but for his occupation as a real estate agent, Skar never would have enjoyed.  Indeed, Skar's alleged misrepresentations to the Bunges' neighbors involved statements related to his job, namely, that he was preparing the home to show to potential buyers.  Like the conduct at issue in Zimmerman that occurred in the workplace, the alleged conduct in this case occurred in what amounted to Skar's workplace—the home that he was supposed to be selling.

Although the Court holds that this rationale applies to all of the claims against Skar, this rationale is especially true with regard to the Bunges' negligence claims set forth in the underlying complaint.  As noted above, Skar would have this Court summarily deny Safeco's

Motion because he believes two negligence claims <u>ipso</u> <u>facto</u> obligate Safeco to defend him.  But those claims specifically allege that Skar breached his duty to them as a real estate agent—in other words, in a business capacity—and therefore the business-pursuits exclusion becomes all the more relevant.  The Bunges allege that Skar's conduct was a breach of his duty as a real estate agent, and that the resultant injuries flowed from that breach.  By definition, the business-pursuits exclusion must apply.

The exception to the exclusion is also no help to Skar.  First, the Minnesota Supreme Court has counseled against applying it too broadly "because there would be few instances where a search for an ordinarily nonbusiness pursuit, no matter how strained, would not lead to enforcing the exception."  <u>Id.</u>  Second, although Skar's alleged conduct is normally a non-business activity, in the entire context of the alleged incident Skar could not have engaged in the conduct where and how he did outside of the business relationship he enjoyed with the Bunges.  <u>Cf.</u> <u>id.</u> ("[W]e conclude that the exception cannot apply where, by definition, the liability-creating conduct is based upon the employment relationship in a business setting.").  Thus, the Court finds that this exception to the exclusion is inapplicable.  The business-pursuits exclusion precludes coverage in this case.

### D.      Professional-Services Exclusion

Safeco argues that the insurance policy's professional-services exclusion should also apply in this case.  That exclusion states that coverage will not include harm "arising out of the rendering or failing to render professional services."  (Smith Aff. Ex. 1 at SAF000021, 36.)  Having already defined "arising out of," the Court must now address the meaning of "professional services."  This phrase is not defined in the policy.

"A professional service is one calling for specialized skill and knowledge in an occupation or vocation.  The skill required to perform a professional service is predominantly intellectual or mental rather than physical."  Ministers Life v. St. Paul Fire & Marine Ins. Co., 483 N.W.2d 88, 91 (Minn. Ct. App. 1992) (citation omitted).  Skar was a state-licensed professional real estate agent who was purportedly using his expertise to assist the Bunges' in selling their home.  Skar does not explicitly contest the characterization of his former job as a "professional service," and it is quite clear that Skar, like all real estate agents who specialize in the sale of homes, used his intellectual and mental abilities to perform a specialized service.

Skar contests Safeco's argument that his alleged conduct arose out of his rendering or failing to render professional services.  Specifically, Skar argues that liability arose out of conduct that was not related to his rendering of professional services.  The case of Houg v. State Farm Fire and Casualty Company is instructive on this point.  In that case, the Minnesota Court of Appeals reversed a district court finding that a minister's sexual misconduct against a parishioner did not fall under the professional-services exclusion.  509 N.W.2d 590, 592 (Minn. Ct. App. 1993).  The court held that the underlying claim "arose out of tainted professional services," and thus that the professional-services exclusion did indeed apply.  Id. at 593.  In this case, Skar's alleged conduct flows from his purported rendering of professional services as a licensed real estate, even though the conduct itself, like the sexual misconduct in Houg, is not normally related to such services.

Again, the Court notes that this exclusion is most applicable to the Bunges' negligence claims.  As noted above, those claims specifically allege that Skar breached his duty as a real estate agent and that he never intended to sell the Bunges' home, instead allegedly using it for

10

his own nefarious purposes.  Such a failure to render professional services falls squarely within

the plain language of the professional-services exclusion, and thus Safeco has no duty to defend.

III.     CONCLUSION

Because Skar's alleged conduct was foreseeable and arose from both his business

pursuits and rendering of professional services, Safeco has no duty to defend Skar in the

underlying lawsuit.  **THEREFORE, IT IS HEREBY ORDERED THAT** Plaintiff's Motion for

Summary Judgment [Doc. No. 16] is **GRANTED**.


**LET JUDGMENT BE ENTERED ACCORDINGLY**.


Dated:    July 27, 2011                                    s/Susan Richard Nelson
                                                           SUSAN RICHARD NELSON
                                                           United States District Judge